**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| **Adrian Vaillant Savigne**,<br><br>Petitioner,<br><br>vs.<br><br>**Markwayne Mullin**, Secretary, Department of Homeland Security, U.S. Department of Homeland Security, in his official capacity; **David Venturella**, Acting Director of Immigration and Customs Enforcement, Immigration and Customs Enforcement, in his official capacity; **David Easterwood**, Field Office Director of Enforcement and Removal Operations, Minneapolis – St. Paul Field Office, Immigration and Customs Enforcement, in his official capacity; **Robert Roed**, Sheriff of Ward County, North Dakota, custodian of detainees at the Ward County Jail, in his official capacity;<br><br>Respondents. | ) | **ORDER GRANTING PETITION FOR HABEAS RELIEF**<br><br>Case No. 1:26-cv-246 |

This matter is before the Court on Petitioner Adrian Vaillant Savigne's petition for a writ of habeas corpus under 28 U.S.C. § 2241, filed on August 3, 2026. See Doc. No. 1. The Respondents[1] filed a Response on August 7, 2026. See Doc. No. 3. The Petitioner filed a Reply on August 9, 2026. See Doc. No. 4. On August 13, 2026, the Court ordered the parties to submit additional briefing to clarify the authority under which the Petitioner was paroled into the United States. See Doc. No. 5. Both parties complied in a timely manner. See Doc. Nos. 6, 7, and 8. For the reasons

[1] The response was filed only on behalf of the federal respondents. Sheriff Robert Roed did not provide a separate response, nor does the Court find one necessary.

set forth below, the Court grants the petition and orders the Respondents to provide the Petitioner with a bond hearing.

## I. BACKGROUND

### A. ENTRY AND DETENTION

The Petitioner is a citizen of Cuba who entered the United States at the Calexico West Port of Entry in Calexico, California on September 9, 2024, following an appointment with Customs and Border Patrol scheduled through the CBP One Application. Following the appointment, officials placed the Petitioner in removal proceedings, granted him parole into the United States until September 9, 2026, and issued a Notice to Appear before an Immigration Judge on January 29, 2025. The Petitioner states that after the requisite year of continuous presence following his parole into the United States, he filed a Form I-485, Application to Register Permanent Residence or Adjust Status, which remains pending.[2] Following his parole, the Petitioner resided in North Dakota. He has no criminal history.

On July 14, 2026, the Petitioner was arrested in Minot, North Dakota. The Respondents allege the arrest was the result of a joint targeted operation with the Enforcement and Removal Operations Division of Immigration and Customs Enforcement, Homeland Security Investigations, United States Border Patrol, and the Minot Police Department. Following his arrest, the Petitioner was taken into custody and served with an arrest warrant. See Doc. No. 3-3. The Respondents allege the I-200 Warrant for Arrest of Alien was issued on July 13, 2026. However, the Petitioner argues

[2] On May 1, 2026, during a hearing before Immigration Judge Lynn Wang as part of his removal proceedings, the Petitioner withdrew with prejudice his applications for (1) asylum, (2) withholding of removal under INA § 241(b)(3), and (3) withholding of removal under the Convention Against Torture. See Doc. No. 3-2. Consequently, Immigration Judge Wang ordered that the Petitioner be removed. Id. However, the Petitioner timely appealed the Removal Order, and that appeal is still pending before the Board of Immigration Appeals.

the warrant is defective. The Petitioner is currently detained at the Ward County Jail in Minot, North Dakota.

### B. PAROLE STATUS AND REVOCATION

The Habeas Petition assumes that the government originally granted the Petitioner parole pursuant to its parole program for nationals from Cuba, Haiti, Nicaragua, and Venezuela, which the Department of Homeland Security ("DHS") announced in 2022 and 2023 to allow such individuals to "lawfully enter the United states in a safe an orderly manner." See Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266-02 (Jan. 9, 2023). The Petition further assumes that his parole was terminated pursuant to a March 25, 2025, DHS notice in the Federal Register terminating the CHNV Program as to all program participants and announcing its intention to terminate the temporary parole periods of aliens paroled under the Program on April 24, 2025, if not already expired by that date. The Respondents agreed with this assumption, stating that the Petitioner was paroled under the CHNV Program, and that his parole was terminated on April 24, 2026, consistent with the DHS' notice in the Federal Register.

Based on its review of the record, the Court determined it was unlikely the Petitioner had participated in the CHNV Program. The CHNV Program requires applicants to pass security vetting, fly at their own expense to an interior port of entry, and have a supporter in the United States who agrees to provide financial support. See Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266-02 (Jan. 9, 2023). The parties submitted no evidence of the Petitioner meeting such requirements. The Court therefore ordered the parties to submit additional briefing to clarify the authority under which the Petitioner was paroled under. See Doc. No. 5.

In response to the Court's Order for Additional Briefing (Doc. No. 5), the Respondents conceded that the Petitioner was originally paroled under the general humanitarian parole statute, 8 U.S.C. § 1182(d)(5)(A), not the CHNV Program. See Doc. No. 7. Both parties agree that the Petitioner's parole under 8 U.S.C. § 1182(d)(5)(A) was originally set to expire on September 8, 2026. The Respondents no longer contend the Petitioner's parole was terminated via the March 25, 2025, Federal Register notice terminating the CHNV Program. Rather, the Respondents now allege the Petitioner's parole was terminated via email.

The Respondents allege that on April 21, 2026, the Commissioner of the United States Customs and Border Protection ("the Commissioner") issued a memorandum entitled "Notice of Determination and Termination of Parole for Aliens Paroled into the United States after Using the CBP One Mobile Application" ("CBP One Notice"). See Doc. No. 8-2. The CBP Notice states that the Commissioner "reviewed the circumstances" under which paroles were issued using the CBP One App, and stated the following:

> I have determined that neither humanitarian reasons nor significant public benefit warrants the continued presence in the United States of those aliens who were granted parole after using the CBP One App. I have also determined that the purposes for which parole was authorized have been accomplished through other means. Therefore, termination is appropriate and necessary.

Id. Subsequently, the Commissioner stated that he is "exercising [his] discretion to terminate the parole of aliens paroled into the United States after making an appointment using the CBP One App. [And he] direct[s] the CBP Office of Field Operation to send individual notice to aliens whose parole is being terminated." Id.

The Respondents allege that on April 25, 2026, the CBP sent an email to the Petitioner explaining that the "DHS is exercising its discretion to terminate your parole[,]" and referencing the CBP One Notice. See Doc. No. 11-1. The Petitioner alleges he did not receive the email.

### C. RELIEF REQUESTED

On August 13, 2026, the Petitioner filed a petition for habeas relief under 28 U.S.C. § 2241. See Doc. No. 1. The Petitioner asserts claims based on alleged violations of (1) the Administrative Procedure Act (the "APA"), (2) his due process rights guaranteed by the Fifth Amendment, (3) and his right against unreasonable searches and seizures guaranteed by the Fourth Amendment. Specifically, the Petitioner argues that termination of his parole "without notice or cause and without providing him with an opportunity to be heard before a neutral decision maker and despite his pending application for adjustment of status, [is] in violation of due process and the [Administrative Procedure Act]." See Doc. No. 1, p. 11. The Habeas Petition asks the Court to order the Respondents to immediately release the Petitioner from custody.

## II. LEGAL ANALYSIS

A district court may provide habeas relief to a person who is being detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). That authority includes jurisdiction to hear habeas challenges to detention related to immigration. Zadvydas v. Davis, 533 U.S. 678, 687 (2001). The burden is on the Petitioner to prove his detention is unlawful by a preponderance of the evidence. See Aditya W. H. v. Trump, Civ. No. 25-1976 (KMM/JFD), 782 F. Supp. 3d 691, 702-03 (D. Minn. May 14, 2025) (collecting cases). The Court will address the Petitioner's first two claim: that his detention is in violation of the Administrative Procedure Act and his due process rights under the Fifth Amendment.[3]

[3] Because the Court finds for the Petitioner on his Due Process claim, it does not address his claims under the Fourth Amendment.

### A. ADMINISTRATIVE PROCEDURE ACT

The Petitioner contends that habeas relief is warranted because the early termination of his parole did not comply with regulations, and was therefore a violation of the APA. Under the APA, a court shall "hold unlawful and set aside emergency action, findings, and conclusions found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

It is undisputed that the Petitioner was granted parole under 8 U.S.C. § 1182(d)(5)(A), which was originally set to expire on September 8, 2026. Under 8 U.S.C. § 1182(d)(5)(A), the Secretary of Homeland Security has discretion to parole non-citizens into the United States. The provision states in full:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

The term of parole terminates automatically upon its expiration. See 8 C.F.R. § 212.5(e)(1). However, to terminate the previously granted parole prior to its expiration, the agency must comply with the applicable regulatory and statutory standards. As set forth in 8 C.F.R. § 212.5(e)(2)(i), which governs the "[t]ermination of parole":

> In cases not covered by paragraph (e)(1) of this section,[4] *upon accomplishment of the purpose for which parole was authorized or* when in the opinion of one of the officials listed in paragraph (a) of this section, *neither humanitarian reasons nor*

[4] Paragraph (e)(1) provides for the automatic termination of parole without written notice where the noncitizen has either departed from the United States, or at the expiration of time for which the parole was authorized. The parties do not cite to this paragraph or suggest that either circumstance applies here.

> *public health benefit warrants the continued presence of the alien in the United States*, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i).

The Petitioner cites to Section 212.5(e)(2)(i) and argues that "there is no evidence in the record that Petitioner has ever received notice of his parole being revoked or the reasons for any such revocation," and therefore the revocation was in violation of Section 212.5(e)(2)(i). See Doc. No. 6. The Petitioner denies ever receiving notice of his parole being terminated. Therefore, he contends the Respondents failed to lawfully terminate his grant of parole, which remained valid until September 8, 2026, in violation of the APA.

However, the Respondents allege that on April 25, 2026, Customs and Border Patrol sent the Petitioner "individual notice that his parole was being terminated pursuant to the CBP One Notice" to the Petitioner's personal email address. See Doc. Nos. 7 and 11-1. The Respondents contend that this termination of parole was "brought on by a lawful exercise of discretion by DHS to terminate Petitioner's parole under the authority of the CBP One Notice[.]" See Doc. No. 7. Consequently, the Respondents argue that upon termination of the Petitioner's parole, he reverted to his pre-parole status of an "arriving alien" and is therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(1) pending removal.

Nonetheless, these arguments have become moot. Parole under 8 U.S.C. § 1182(d)(5)(A) terminates automatically and without notice at the expiration of the time for which parole was authorized. See 8 C.F.R. § 212.5(e)(1). The parties agree that the Petitioner's parole was originally set to expire on September 8, 2026, which has since past. Since the Petitioner's parole automatically terminated on September 8, 2026, the argument that the early termination was a violation of the APA, which in turn made his current detention in violation of federal law, is no

longer relevant. Therefore, the Court will turn to analyzing the Petitioner's Fifth Amendment Due Process claim.

**B. DUE PROCESS CLAUSE**

The Petitioner argues that his arrest and detention without an individualized determination of removability and flight risk violates his right to procedural due process. See Doc. No. 1, p. 25. The Petitioner also argues that the early termination of his parole was a violation of due process. As stated above, it is undisputed that the Petitioner's parole was originally set to expire on September 8, 2026, and therefore the Petitioner's parole automatically terminated on September 8, 2026. See 8 C.F.R. § 212.5(e)(1). Consequently, this argument is now moot. Therefore, the Court will only analyze the Petitioner's due process claim regarding his detention without a bond hearing.

The Respondents argue the Petitioner does not have a due process claim because he is subject to mandatory detention under either 8 U.S.C. § 1225(b)(1) or 1225(b)(2)(A), and point to the Eighth Circuit Court of Appeals case, *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). See Doc. No. 5. In *Avila*, the court interpreted 8 U.S.C. § 1225(b)(2)(A) to require detention of any non-citizen present in the United States who has not been admitted, regardless of whether they are arriving at the border or within the interior, if an examining officer determines that the non-citizen seeking admission "is not clearly . . . entitled to be admitted." See Avila, 2026 WL 819258, at *3-4. The Respondents state that whether the Petitioner falls under Section 1225(b)(1) or 1225(b)(2)(A), *Avila* finds that detention is mandatory pursuant to the statute. See Doc. No. 3. However, the decision in *Avila* says nothing about whether the Petitioner's detention comports with due process.

The Petitioner alleges that his detention infringes upon his rights under the Due Process Clause of the Fifth Amendment. See Doc. No. 1. The Respondents contend this argument is without merit because "mandatory detention of an alien pending deportation is not a violation of the alien's right to procedural due process.'" See Doc. No. 5, p. 3 (citing Alvacora v. Olson, No. 0:26-CV-00675-DMT-SGE, 2026 WL 220417, at *4 (D. Minn. Jan. 28, 2026) (quoting Demore v. Kim, 538 U.S. 510, 529-31 (2003))). The Court disagrees with that broad statement. See Rodriguez v. Ortega, 180 F.4th 702, 718 (5th Cir. 2026), reh'g en banc granted, opinion vacated, 181 F.4th 608 (5th Cir. 2026) (finding that three petitioners in virtually identical situations as Perez Alvarado "are entitled to invoke the protections of the Due Process Clause"). While the executive branch has made fundamental changes to immigration policy over the last year, such changes remain "subject to important constitutional limitations[,]" as the Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; see also A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (per curiam) (procedural due process protections apply to removal proceedings for persons detained under the Alien Enemies Act).

The Fifth Amendment provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025). The fundamental requirement in providing due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (citation omitted). However, in the immigration context, the United States Supreme Court has found that "Congress regularly makes rules that would be unacceptable if applied to citizens[.]" Mathews v. Diaz, 426 U.S. 67, 79-80 (1976). Thus, the "nature of th[e]

protection" to which non-citizens are entitled under the Due Process Clause "var[ies] depending upon status and circumstance." Zadvydas, 533 U.S. at 693-94. Therefore, this Court will consider what protections the Petitioner is entitled to as a non-citizen detained under 8 U.S.C. § 1225(b)(2). See Aleksei M. v. Warden, Lawrence Cnty. Jail, No. CV 05030, 2026 WL 1133615, at *5 (D.S.D. Apr. 27, 2026).

*Mathews v. Eldridge*, 424 U.S. 319 (1976) establishes a three-part balancing test to analyze "the process that is constitutionally due" when Fifth Amendment protections are invoked. 424 U.S. at 322-33. The Respondents contend this Court should not apply the *Mathews* balancing test, arguing that the Eighth Circuit Court of Appeals "expressly rejected" the application of the test "[i]n the immigration context" in *Banyee*. See Doc. No. 5, p. 6 (citing to Banyee v. Garland, 115 F.4th 928, 933 (8th Cir. 2024). However, *Banyee*, and the United States Supreme Court case it largely relies upon for support, *Demore*, are distinguishable from the present case. See Banyee, 115 F.4th at 933 (reviewing how Demore v. Kim, 538 U.S. 510, 514 (2001) already "had considered a due-process challenge to" 8 U.S.C. § 1226(c)).

In *Demore*, the United States Supreme Court rejected a due process challenge to 8 U.S.C. § 1226(c), which mandates detention for non-citizens convicted of certain crimes. Demore, 538 U.S. at 530. There, the detainee was a "criminal alien" who was detained for "the limited period of his removal proceedings." Demore, 538 U.S. at 531. Similarly, in *Banyee*, the Eighth Circuit concluded that there was no due process violation when a removable "criminal alien" was detained for more than a year under Section 1226(c). Banyee, 115 F.4th at 930-33. In both *Demore* and *Banyee*, the petitioners were subject to criminal detention because they committed one of the criminal offenses identified in 8 U.S.C. § 1226(c). Since they had been in criminal detention, the courts found the petitioners received "the full procedural protections our criminal justice system

offers" *before* being detained pursuant to 8 U.S.C. § 1226(c). Demore, 538 U.S. at 513. In this case, the Petitioner has received no such procedural protections. The Petitioner is not a "criminal alien" and has not been subjected to criminal detention before being detained pursuant to 8 U.S.C. §1225(b)(2). See Doc. No. 1. Rather, Executive Branch officials simply changed their mind—and upended decades of practice—by deciding that he has been subject to mandatory detention under 8 U.S.C. § 1225(b)(2) since the day he entered the United States.

Relying on this distinction between Section 1226(c) and Section 1225(b)(2), many district courts within the Eighth Circuit, this Court, and the Fifth Circuit Court of Appeals, have proceeded to analyze the factors established by *Mathews* when reviewing due process claims brought by detained non-citizens like the Petitioner. See Aleksei M., No. CV 05030, 2026 WL 1133615, at *5 (collecting cases); Murcia Chavez v. Blanche et al., 1:26-cv-11145-DLH-CRH, Doc. No. 9 (D. N.D. May 18, 2026); Rodriguez, 180 F.4th at 725 (5th Cir. 2026), reh'g en banc granted, opinion vacated, 181 F.4th 608 (5th Cir. 2026).[5] This Court will continue to follow suit. Even accepting that *Avila* mandates detention under 8 U.S.C. § 1225(b)(2) and perhaps § 1225(b)(1), the question of whether constitutional due process claims must still be considered is clear—they must be carefully considered. *Avila* did not address whether non-citizens mandatorily detained under 8 U.S.C. § 1225 can still challenge their detention as a violation of constitutional due process. Fairness and common sense mandate that such challenges are not precluded from consideration.

The three factors set forth in *Mathews* to consider in determining "the process that is constitutionally due" before non-citizens may be deprived of their liberty interests are: (1) "the private interest that will be affected by" his detention; (2) "the risk of an erroneous deprivation of

[5] The Court notes that on July 10, 2026, the Fifth Circuit Court of Appeals ordered that *Rodriguez* shall be reheard by the court en banc, and consequently vacated it's July 2, 2026, opinion. Rodriguez v. Ortega, 181 F.4th 608, 609 (5th Cir. 2026). However, the Court still looks to the July 2, 2026, decision as persuasive authority.

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. As to the first factor, "the most elemental of liberty interests [is] the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529-31 (2004). It cannot seriously be disputed that the Petitioner has a cognizable liberty interest in remaining out of custody. The Petitioner is currently in custody in the Ward County Jail in Minot, North Dakota, at which pretrial criminal detainees and convicted criminals are also held. See Günaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2005) (stating that under the first *Mathews* factor, courts "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration."). The Court finds that the first *Mathews* factor favors the Petitioner.

The second *Mathews* factor considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." Darvin M. v. Bondi, 817 F. Supp. 3d 740, No. 26-cv-0437, 2026 WL 184843, at *6 (D. Minn. Jan. 24, 2026) (quoting Günaydin, 784 F. Supp. 3d at 1187). Here, the risk of erroneous deprivation is high since the Respondents are proposing *no procedure* at all. See e.g., Pedro A.D.L.O.O. v. Bondi, No. CV 26-1959 (DWF/DJF), 2026 WL 948970, at *3 (D. Minn. Apr. 8, 2026); Syed Abbas v. Schneider, No. 4:26-CV-00132, 2026 WL 1079292, at *8 (S.D. Iowa Apr. 17, 2026); Aleksei M., No. CV 05030, 2026 WL 1133615, at *6. The second factor weighs in favor of the Petitioner.

The third *Mathews* factor requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." Mathews, 424 U.S. at 335. The burden on the Respondents in providing the Petitioner with a bond hearing would be minimal at best. The Petitioner has no criminal history, lived in the United States on a grant of parole for the past two years, and until his arrest, was gainfully employed with valid work authorization. Additionally, there is no evidence that the Petitioner is a flight risk. Thus, although "ensuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest," Maldonado v. Olson, 795 F. Supp. 3d 1134, 1153-54 (D. Minn. 2025); Günaydin, 784 F. Supp. 3d at 1189-90, the interest is not implicated here in any meaningful way. The third *Mathews* factor also favors the Petitioner.

Upon analysis of the *Mathews* factors, the Court finds that the process due to the Petitioner is a bond hearing. A bond hearing before an Immigration Judge will balance the interests of the Petitioner and the Respondents. A bond hearing does not mandate release. The administrative burden of such a hearing is minimal, particularly when measured against the liberty interests at stake.

## III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. The Petitioner's petition for writ of habeas corpus (Doc. No. 1) is **GRANTED** to the extent that he shall receive a bond hearing before an Immigration Judge.
2. The Respondents are **ORDERED** to provide the Petitioner with a bond hearing before an Immigration Judge within seven (7) days of the date of this Order.

3. If the Respondents do not provide the Petitioner with a bond hearing in accordance with this Order, the Petitioner must be immediately released from detention.
4. Within ten (10) days of the date of this Order, the Respondents shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding the date, time, and location of the Petitioner's release.
5. The Petitioner's Motion to Strike (Doc. No. 9) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 28th day of September, 2026.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court